**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EVERTZ MICROSYSTEMS LTD., | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 19-302-MN-JLH |
| LAWO INC., LAWO NORTH AMERICA CORP., and LAWO AG, | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

Pending before the Court is Plaintiff's Renewed Motion Regarding a Protective Order Dispute. (D.I. 48.) Plaintiff Evertz Microsystems Ltd. ("Evertz") and Defendants Lawo Inc., Lawo North America Corp., and Lawo AG (collectively, "Lawo") dispute the scope of a protective order to govern the disclosure of confidential information produced in discovery. Although Evertz and Lawo agree that a protective order should be entered, they disagree about whether Evertz's long-time outside counsel should have access to Lawo's confidential technical information. For the reasons discussed below, I conclude that Evertz's outside counsel should be permitted access, and I order the parties to submit a proposed protective order complying with the restrictions set forth in this order.

**I.     BACKGROUND**

On February 12, 2019, Evertz sued Lawo for infringement of U.S. Patent No. 8,537,838. (D.I. 1.) Before Lawo answered, Evertz amended its complaint to include infringement allegations for six additional patents. (D.I. 6.) Lawo answered on July 10, 2019 and filed an amended answer on August 7, 2019, asserting numerous affirmative defenses and counterclaims. (D.I. 18, 22.) Evertz moved to dismiss some of Lawo's counterclaims. (D.I. 26.) That motion remains pending.

On October 3, 2019, Evertz filed its first motion to resolve a protective order dispute. (D.I. 35.) After reviewing the parties' submissions (D.I. 41, D.I. 44) and hearing argument on October 15, 2019, I denied the motion without prejudice and directed the parties to engage in good faith discussions to resolve the dispute based on the Court's instructions. (D.I. 45.) The parties' efforts were unsuccessful, and Evertz filed a renewed motion to resolve a protective order dispute. (D.I. 48, 52.) Lawo filed a response (D.I. 56), and I heard oral argument yesterday.

The parties have conflicting views about the scope of the protective order to be entered by the Court. Evertz requests that Bhupinder Randhawa and Lawrence Yu of Bereskin & Parr, LLP, outside counsel for Evertz, be permitted to have access to material designated "Confidential" or "Highly Confidential Technical – Attorneys' Eyes Only." Evertz is a Canadian company and Bereskin & Parr, a Canadian law firm, has acted as Evertz's outside counsel for nearly twenty years. (D.I. 52 at 2.)

Evertz has provided the following information about Randhawa and Yu, which is unrebutted by Lawo.[1] Randhawa and others at his firm have represented Evertz for nearly twenty years. (D.I. 52 at 2.) Randhawa has participated in "patent preparation and prosecution for Evertz," and he and others at his firm have "provide[d] legal advice to Evertz on various patent matters including, for example, patentability, inventorship, and review of third-party patents." (*Id.*, Ex. 2 ¶ 4.) Although Randhawa "advise[s] Evertz on the technological aspects of Evertz's IP enforcement," he "do[es] not make determinations for Evertz about whether to pursue patent

---

[1] In its papers, Lawo argued that Evertz refused to answer certain questions about Randhawa's and Yu's activities; however, during oral argument counsel was unable to articulate any specific unanswered question that bears on the risk of inadvertent disclosure. I have also compared the list of questions raised by Lawo (D.I. 52, Ex. 3) to a declaration submitted by Mr. Randhawa (D.I. 52, Ex. 2), and I find that the declaration sufficiently answers the questions relevant to the issue of inadvertent disclosure.

litigation against competitors or whether to license Evertz's patents to those competitors." (*Id.*, Ex. 2 ¶ 7.)

Evertz wants the Bereskin & Parr attorneys on its litigation team in this case because they have gained "expertise in the relevant art" through their prior work with Evertz. (D.I. 52 at 2.) According to Evertz, absent access to Lawo's technical information, Randhawa and Yu will be unable to meaningfully assist Evertz's litigation team and Evertz will suffer substantial harm. (*Id.*) In order to minimize the risk of inadvertent disclosure of Lawo's information, Evertz has proposed that Randhawa and Yu be subject to a so-called "prosecution bar" that restricts them from performing patent prosecution work involving related technologies while this litigation is pending.

Lawo seeks to prevent Randhawa's and Yu's access, arguing that it would create an unacceptably high risk of inadvertent disclosure or use of its confidential information. (D.I. 56 at 1.) Lawo argues that the risk is unacceptable regardless of the scope of any prosecution bar. (*Id.*) It also contends that Evertz's proposed prosecution bar is insufficient because it doesn't restrict Randhawa and Yu from participating in post-grant review proceedings.

## II. DISCUSSION

### A. Legal Standard

A party has a strong interest in choosing counsel to represent it, and that counsel generally has a right to access all materials in the case including those produced confidentially during discovery.[2] *See British Telecomms. PLC v. IAC/InterActiveCorp.*, 330 F.R.D. 387, 390 (D. Del.

---

[2] Lawo does not contend that Evertz's interest in selecting its counsel is affected by the fact that Randhawa and Yu are Canadian attorneys. Even if Randhawa and Yu don't formally enter an appearance in this case, Delaware Rule of Professional Conduct 5.5 permits "[a] lawyer admitted . . . in a foreign jurisdiction . . . to provide legal services on a temporary basis in this jurisdiction that: (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter . . . ." DEL. RULES OF PROF'L CONDUCT r. 5.5. Randhawa and Yu have agreed to be bound by the terms of any protective order entered in this

3

2019). This general rule is not without limitations, and counsel's access to confidential information may be denied or limited when there is a high risk of inadvertent disclosure. *See id.* Determining if there is a high risk of inadvertent disclosure is a fact-intensive inquiry that must be conducted on a counsel-by-counsel basis. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). When conducting this inquiry, courts should not solely focus on whether counsel is in house or retained. Rather, the critical question is whether counsel "is in a position that creates a high risk of inadvertent disclosure." *Motorola, Inc. v. Interdigital Tech. Corp.*, C.A. No. 93-488-LON, 1994 WL 16189689, at *4 (D. Del. Dec. 19, 1994).

When analyzing the risk of inadvertent disclosure, courts consider whether counsel is involved in "competitive decisionmaking." *British Telecomms.*, 330 F.R.D. at 390-91. Competitive decisionmaking has been defined as "'counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.'" *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403, 2017 WL 4138961, at *3 (D. Del. Sept. 8, 2017) (quoting *U.S. Steel Corp.*, 730 F.2d at 1468 n.3). Courts undertake this analysis not because competitive decisionmakers take confidentiality obligations any less seriously than their counterparts, but because it helps assess whether counsel maintains a role that might make it difficult to compartmentalize her knowledge. *See Motorola, Inc.*, 1994 WL 16189689, at *4; *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("Courts have recognized . . . that there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the

---

case, and they have also agreed to submit to the jurisdiction of this Court for purposes of enforcing their compliance.

provisions of such a protective order may not prevent inadvertent compromise. As aptly stated by the District of Columbia Circuit, '[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well intentioned the effort may be to do so.'" (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)).

If a court determines that there is a risk of inadvertent disclosure or use of confidential information, it "must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, C.A. No. 15-53-RGA, 2016 WL 2904592, at *2 (D. Del. May 18, 2016) (quoting *In re Deutsche Bank*, 605 F.3d at 1380). One way to strike a balance between these competing interests is with a protective order. *See British Telecomms.*, 330 F.R.D. at 390; *see also* Fed. R. Civ. P. 26(c) (providing that a court, for good cause shown, may issue an order protecting trade secrets and other confidential technical or commercial information). A court has broad discretion to fashion a protective order with the safeguards it deems appropriate in order to reduce the likelihood of inadvertent disclosure or use of confidential information without eliminating counsel's access to it. *In re Deutsche Bank*, 605 F.3d at 1380. The party seeking to impose a specific restriction on opposing counsel's access to confidential information bears the burden to demonstrate good cause for the proposed restriction. *Id.* at 1378.

B.  **Mr. Randhawa and Mr. Yu should be granted access.**

Other than their past participation in patent prosecution activities (discussed further below), the record before me does not support a finding that the Bereskin & Parr attorneys are competitive decisionmakers for Evertz. They do not make pricing or product design decisions. (D.I. 52, Ex. 2 ¶ 10.) Nor do they have "any responsibilities or involvement" in product design or development. (*Id.*) Randhawa does advise Evertz "on the technological aspects of Evertz's IP enforcement," but

5

all litigation counsel do that. (*Id.*, Ex. 2 ¶ 7.) That is not enough to make an attorney a competitive decisionmaker for purposes of this analysis. *Cf. British Telecomms.*, 330 F.R.D. at 393 (citing cases that concluded that in-house counsel were not engaged in competitive decisionmaking when their role was limited to litigation).

I reject Lawo's suggestion that Randhawa is a competitive decisionmaker because his primary contact at Evertz is its Chief Technology Officer, who presumably is a competitive decisionmaker. "[T]he standard is not 'regular contact' with other corporate officials who make . . . competitive decisions, but 'advice and participation' in 'competitive decisionmaking.'" *Matsushita Elec. Indus. Co. Ltd. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991). With the prosecution bar discussed below, there is no basis on this record to think that the Bereskin & Parr attorneys will be advising on and participating in competitive decisionmaking any more than any other outside counsel. Moreover, Lawo has not cited a single case in which outside counsel, not otherwise engaged in patent prosecution, was denied access to confidential information.

Even if I thought there was an appreciable risk of inadvertent disclosure, I would still be required to weigh that risk against the potential harm to Evertz. Evertz contends that Mr. Randhawa has extensive expertise concerning the patents at issue and the relevant art. Based on the record before me, and in view of the prosecution bar discussed below, I agree that Evertz's interest in retaining counsel experienced in the relevant art, as well as its more general interest in choosing its own counsel, outweighs any risk of inadvertent disclosure. *See Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, C.A. No. 96-1231-IEG (POR), 1997 U.S. Dist. LEXIS 24130, at *21-27 (S.D. Cal. Jul. 15, 1997) (holding that the defendant's outside IP counsel should be granted access to the plaintiff's confidential information because the risk of inadvertent disclosure was outweighed by the harm the defendant would suffer if access were denied).

6

### C. Evertz's proposed patent prosecution bar should be modified.

The primary risk of inadvertent disclosure comes from Mr. Randhawa's and Mr. Yu's patent prosecution activities for Evertz. Courts frequently impose prosecution bars to protect against the risk of inadvertent disclosure when counsel has been or may be involved in related patent prosecution activities. *See British Telecomms.*, 330 F.R.D. at 395-398 (collecting cases). Here, Evertz has agreed to make Randhawa and Yu subject to a patent prosecution bar.

Lawo suggests that Evertz's proposed prosecution bar is insufficient because it doesn't restrict Randhawa and Yu from participating in post-grant review proceedings regarding the patents at issue. Although post-grant proceedings "do not present the same risk of competitive misuse as does involvement in patent prosecution," the risk of inadvertent disclosure or use is not absent. *See id.* at 395-96. The risk exists even in post-grant proceedings because "patent prosecutors can arrange to 'strategic[ally] narrow' claims to avoid prior art while still capturing the defendants' products." *Id.* at 396. Many courts, therefore, have resolved these types of disputes by including a provision in the protective order permitting "counsel who have had access to confidential information to participate in post-grant proceedings, but prohibiting them from participating in drafting or amending claims in those proceedings." *Id.* at 396-97 (collecting cases).

During oral argument, I asked Evertz if it would be amenable to such a provision. Counsel for Evertz agreed to expand the prosecution bar to prohibit Randhawa and Yu from participating in drafting or amending claims in any post-grant proceedings. I find that this approach strikes the appropriate balance between the interests of Evertz and the risk to Lawo in this case. *See id.* at 398.

**III.     CONCLUSION**

For the foregoing reasons, I agree with Evertz that Mr. Randhawa and Mr. Yu should be permitted access to confidential information produced by Lawo, subject to the additional prosecution bar restriction set forth above. Within five days from the date of this Order, the parties shall jointly submit a Protective Order consistent with the Court's opinion.

IT IS SO ORDERED this 8th day of November, 2019.

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE